| | |
|---|---|
| KAELA LOUISE ALLVIN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:21-CV-269-JEM ) |
| KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

# MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 14]. Now before the Court are Plaintiff's Motion for Summary Judgment [Doc. 20] and Defendant's Motion for Summary Judgment [Doc. 25]. Kaela Louise Allvin ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Kilolo Kijakazi ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

## I. PROCEDURAL HISTORY

On February 1, 2016, Plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, claiming a period of disability that began on January 13, 2016 [Tr. 116, 245–46]. After her application was denied initially and upon reconsideration, she requested a hearing before an ALJ [*Id.* at 116, 136, 155]. A telephonic hearing

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration ("the SSA") on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit. *See* 42 U.S.C. § 405(g).

was held on June 17, 2020 [*Id.* at 54–77]. On July 2, 2020, the ALJ found that Plaintiff was not disabled [*Id.* at 8–27]. The Appeals Council denied her request for review on May 24, 2021 [*Id.* at 1–4], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on July 28, 2021, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2019.
>
> 2. The claimant has not engaged in substantial gainful activity since January 13, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: multiple sclerosis (MS), seizures, obesity, and affective disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can lift and/or carry 10 pounds occasionally, less than 10 pounds frequently. She can sit, with normal breaks, for a total of just 6 hours per 8-hour workday, but can only stand and/or walk, even with normal breaks, for a total of just 2 hours per 8-hour workday. In terms of postural limitations, she can never climb ladders, ropes, or scaffolds, but she can occasionally climb ramps and stairs, balance, kneel, stoop, crouch and crawl. She must be

permitted to utilize a hand held assistive device to stand and to ambulate but she can carry items in the contralateral hand. In terms of environmental limits, she should avoid even moderate exposure to extreme heat and should avoid all exposure to hazards, such as machinery and unprotected heights. She cannot perform work activity that requires driving as a part of her duties. In terms of mental health limitations, she can understand, remember and carry out short and simple instructions and tasks, but not detailed or complex tasks. She can concentrate and attend for reasonable period of time up to two hours within the previously described restrictions. She can have occasional social interaction with co-workers and supervisors, but should not interact with the general public. She can adapt to occasional work-places changes.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on June 30, 1983 and was 32 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 13, 2016, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 13–26].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision

was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes*

4

*v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).  Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived.  *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.  If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

5

> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4) and -(e). An RFC is the most a claimant can do despite her limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

Plaintiff claims the ALJ's RFC determination lacks the support of substantial evidence for one reason—because he failed to properly weigh the opinion of treating physician Stephen Rachael, M.D. ("Dr. Rachel"). Specifically, she alleges the ALJ failed to provide "good reasons" for not affording Dr. Rachael's opinion controlling weight [Doc. 23 p. 16]. Plaintiff requests the Court vacate the Commissioner's final decision and remand this matter for further administrative proceedings, including but not limited to a *de novo* hearing and a new decision. The Commissioner argues that the ALJ properly considered numerous factors in evaluating Plaintiff's RFC, including the medical evidence, non-medical evidence, and her statements about what she could do. The

6

Commissioner states that, contrary to Plaintiff's contentions, the ALJ appropriately considered the opinion evidence, and his RFC finding is supported by the record. As explained below, the Court finds that the ALJ sufficiently explained why he afforded little weight to Dr. Rachael's treating opinion, as he provided the requisite good reasons for doing so, and his final RFC finding is supported by substantial evidence.

On April 26, 2016, Dr. Rachael completed a medical source statement where he listed Plaintiff had multiple sclerosis ("MS"), chronic diffuse abdominal pain, and chronic myalgia [Tr. 527]. Dr. Rachael opined that:

> Plaintiff would miss more than 5 days per month due to her medical conditions; frequently sit; occasionally stand, walk, stoop, and climb; frequently lift/carry up to 5 pounds; occasionally lift/carry up to 10 pounds; infrequently lift/carry more than 10 pounds; infrequently use hands for fine manipulation; occasionally use hands for gross manipulation; frequently raise bilateral arms over her shoulder; Plaintiff would be off task due to pain 50 percent of the workday; would need to lie down occasionally 2–3 hours; would need unscheduled breaks in excess of the typical amount allowed; and would require the use of an assistive device to ambulate.

[*Id.* at 527–28]. The ALJ afforded little weight to Dr. Rachael's opinion [*Id.* at 23]. The ALJ stated:

> Little weight is given to the opinion of Dr. Rachael, as the opinion is remote in nature, it is not supported by the objective evidence of record, and it is not in truly vocationally relevant terms. I note that this provider is a primary care provider; however, he is not the claimant's primary treating provider in regards to her multiple sclerosis or seizures. Moreover, the provider cited no objective evidence or rationale for reasoning that the claimant would be off task 50% of the workday and/or would be absent from work more than five days per month. Finally, the provider offered no explanation as to why the claimant necessitated a cane, and records from the time the opinion was rendered were absent consistent documentation of significant balance, gait, or stamina issues.

[*Id.* at 23–24].

Plaintiff claims the ALJ's analysis is insufficient under the relevant SSA regulations and caselaw. Plaintiff states his assertion that Dr. Rachael did not offer an opinion in "vocationally relevant terms" is inaccurate and that this mischaracterization of the evidence makes it uncertain whether the ALJ was able to clearly determine the effect of her impairments on her ability to perform basic work activities [Doc. 21 pp. 13–14 (citing *Gardner v. Astrue*, No. CIV.A. 2:09-00011, 2009 WL 2356551, at *5 (M.D. Tenn. July 7, 2009), *report and recommendation adopted*, No. 2:09-0011, 2009 WL 2341137 (M.D. Tenn. July 29, 2009))]. Plaintiff argues that Dr. Rachael's opinion used the terms "frequently," "occasionally," and "infrequently" [Tr. 527]. She explains that those terms were defined as follows: frequently, can perform the activity 1/3 up to 2/3 of an 8-hour workday; occasional, can perform the activity from very little up to 1/3 of an 8-hour workday; and infrequently, can perform very little if at all on some days [Doc. 21 p. 14 (citing Tr. 527)]. She contends that these terms are clearly vocationally relevant and are consistent with the SSA's regulations. For example, she says that "occasionally" means occurring from very little up to one-third of the time, and "frequent" means occurring from one-third to two-thirds of the time [*Id.* (citing SSR 83-10)]. Plaintiff asserts the ALJ's finding that Dr. Rachael offered an opinion without "vocationally relevant terms" is therefore unfounded.

She also takes issue with the ALJ's labeling Dr. Rachael's opinion as being remote in nature. Plaintiff states that Dr. Rachael provided his opinion on April 26, 2016, which is within the relevant time frame because she alleged disability beginning on January 13, 2016 [*Id.* (citing Tr. 245)]. She contends this demonstrates the ALJ did not provide a "good reason" for discounting Dr. Rachael's treating source opinion [*Id.* (citing *Johnson v. Comm'r of Soc. Sec.*, No. 3:20-CV-00215-SKL, 2021 WL 5365774, at *7 (E.D. Tenn. Nov. 17, 2021))].

8

Plaintiff further takes issue with the ALJ's finding that Dr. Rachael's opinion "is not supported by the objective evidence of record" [*Id.* (quoting Tr. 23)]. She relies on *King v. Kijakazi*, where this Court remanded because "[t]he ALJ failed to specifically cite to any examination findings or other evidence in the medical record." No. 1:20-CV-196-TAV-HBG, 2021 WL 3520695, at *7 (E.D. Tenn. July 21, 2021), *report and recommendation adopted sub nom.*, 2021 WL 3516659 (E.D. Tenn. Aug. 10, 2021). Plaintiff states that *King* is relevant because, here, the ALJ failed to cite to any evidence in the record when making his determination. She then cites to various aspects of the record that she contends supports Dr. Rachael's opinion that Plaintiff continued to suffer from seizures and MS and supports the limitations that she would likely be off task and would be absent from work [Doc. 21 pp. 15–16 (citing Tr. 528)].[2] Plaintiff argues that the ALJ's decision was erroneous because he "simply concluded [Dr. Rachael's] opinion was not supported by the evidence without citation to the record" [*Id.* at 16].

---

[2] Plaintiff sets forth several examples in support of this contention [Doc. 21 p. 15]. She notes a December 1, 2015 MRI of her thoracic spine showing abnormal increased T2/STIR signal within the upper thoracic cord [*Id.* (citing Tr. 435)]. She states this was most consistent with a demyelinating process such as multiple sclerosis [*Id.* (citing same)]. She also notes that on December 16, 2015, she returned to Dr. Rachael and reported shortness of breath and musculoskeletal pain [*Id.* (citing Tr. 478)]. Dr. Rachael subsequently observed that she had decreased breath sounds, and he assessed her with shortness of breath and myalgia [*Id.* (citing Tr. 480)]. Plaintiff also points out that on April 14, 2016, she had a follow-up appointment with Paul DCruz, M.D. ("Dr. DCruz"), regarding her MS and seizures, and she reported increased weakness, fatigue, intense pain in the left leg and diarrhea 12 hours after taking her Rebif shot [*Id.* (citing Tr. 510)]. Dr. DCruz noted "Plaintiff had seizure activity approximately one week" [*Id.* (citing same)]. Further, Plaintiff states that on June 6, 2017, Randall Trudell, M.D. ("Dr. Trudell"), noted an MRI scan of her brain showed a couple of T2 hyperintensities in the right hemisphere, more juxtacortical than periventricular [*Id.* (citing Tr. 719)]. Plaintiff also had a T2 hyperintensity in the upper thoracic cord, and Dr. Trudell determined probable demyelinating disease [*Id.* (citing same)]. Finally, Plaintiff notes that she saw Sam Kabbani, M.D. ("Dr. Kabbani"), on May 2, 2019, for follow up on her MS and seizures [*Id.* (citing Tr. 754)]. She reported an increase in MS flareups with increased weakness, fatigue, muscle and right leg spasms, and on exam, Dr. Kabbani observed spasticity in trapezius and shoulder and Plaintiff having a slow gain [*Id.* (citing Tr. 754–55)].

9

The Court has considered Plaintiff's arguments that the ALJ improperly discredited Dr. Rachael's opinion for not being in vocationally relevant terms and for being remote in nature and that the objective medical evidence supports his opinion. These arguments, however, are unavailing, as the Court finds substantial evidence supports the ALJ's analysis of Dr. Rachael's opinion.

In considering a claim of disability, the ALJ generally must give the opinion of the claimant's treating physician "controlling weight." 20 C.F.R. § 404.1527(c).[3] But a treating physician's opinion as to the nature and severity of an impairment must be given "controlling weight" only if it is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(c); 416.927(c)(2). When an opinion does not garner controlling weight, the appropriate weight to be given to the opinion will be determined based upon the length of treatment, frequency of examinations, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. *Id.*

The ALJ is not required to explain how he considered each of these factors but must nonetheless give "good reasons" for giving a treating physician's opinion less than controlling

---

[3] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); *see also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017). The new regulations eliminate the term "treating source," as well as what is customarily known as the treating physician rule. But because Plaintiff's application was filed before March 27, 2017, the treating physician rule applies. *See* 20 C.F.R. § 404.1527.

10

weight. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011); *see also Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (holding "good reasons" must be provided "that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight" (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)); 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2)).

As explained below, the Court finds the ALJ provided many good reasons for his assessment of Dr. Rachael's opinion. The ALJ evaluated Dr. Rachael's April 2016 checklist opinion and afforded it little weight [*Id.* at 23–24]. Despite discrediting his opinion, the ALJ limited Plaintiff to sedentary work in the final RFC [*id.* at 16], which seems consistent with Dr. Rachael's opinion that Plaintiff could frequently sit; occasionally stand, walk, and stoop; and lift up to 5 pounds frequently and 10 pounds occasionally [*See id.* at 527]. By contrast, the ALJ found the record as a whole did not support Dr. Rachael's opinions that Plaintiff would be off task 50% of the workday, that she would need to lie down for two or three hours, and that she would be absent more than five days per month [*Id.* at 17, 23–24, 527–28]. In doing so, the ALJ considered that Dr. Rachael was Plaintiff's primary care provider but noted he was not her primary doctor with respect to her treatment for MS or seizures [*Id.* at 23–24]. This was an appropriate factor to consider, as the "ALJ is authorized to weigh conflicting medical evidence, taking into account, among other factors, an expert's 'medical specialty and expertise.'" *See Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(e)).

The ALJ also found that Dr. Rachael's checklist opinion was not supported by the objective medical evidence. The SSA's rules instruct that a treating source's medical opinion will be afforded "controlling weight" when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the]

11

case record . . . ." 20 C.F.R. §§ 1527 (c)(2) & 416.927(c)(2). Here, the ALJ noted that Dr. Rachael cited to no objective evidence nor provided any rationale for his reasoning that Plaintiff would be off task 50% of the workday and/or would be absent from work more than five days per month [Tr. 23–24]. Indeed, "[m]any courts have cast doubt on the usefulness of these [checklist] forms and agree that administrative law judges may properly give little weight to a treating physician's 'check-off form' of functional limitations that 'did not cite clinical test results, observations, or other objective findings . . . .'" *See Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 566 (6th Cir. 2016) (quoting (*Teague v. Astrue*, 638 F.3d 611, 616 (8th Cir. 2011)).

The ALJ also criticized Dr. Rachael's opining that Plaintiff required a cane for ambulation, as this limitation was provided without any explanation. The medical records preceding Dr. Rachael's opinion did not indicate significant balance, gait, or stamina issues [Tr. 24]; Plaintiff repeatedly denied any weakness or gait disturbance to Dr. Rachael [*Id.* at 466, 471, 475, 479, 484, 488, 492, 640]; and, although she reported gait problems to Dr. Kabbani in November 2015, physical examinations indicated she had normal gait and improvement by January 2016 [*Id.* at 764, 766–67]. Nevertheless, the ALJ provided a handheld assistive device limitation in the RFC [*Id.* at 16]. The Court finds the ALJ properly discredited Dr. Rachael's checklist opinion for being inconsistent with the objective medical evidence and for lacking any citations to the objective medical evidence or any rationale for his opined limitations.

The ALJ also considered that Dr. Rachael's opinion was remote in nature [Tr. 23]. The Court finds the ALJ's discussion makes his reasoning for this finding sufficiently clear [*See id.*; Doc. 26 p. 12]. While Dr. Rachael's opinion was dated during the alleged period of disability, it was issued prior to other medical evidence demonstrating significant improvement in Plaintiff's symptoms following infusion treatments. Moreover, treatment records dated after his opinion was

12

issued indicated that she had improvements in walking and bladder function, her seizures were well-controlled, and there had been significant periods without MS flareups [*Id.* at 757, 1786, 1788–89. 1791–92]. The Court therefore finds the ALJ appropriately considered that Dr. Rachael's opinion was remote in nature.

Even if Plaintiff is correct that the ALJ's critique of Dr. Rachael's opinion for not being in vocationally relevant terms is unfounded, the Court finds this to be harmless error at most. As explained above, the ALJ's primary reason for discrediting his opinion was the lack of consistency with the objective medical evidence and the fact that he provided no explanation for his opined limitations. In addition, the ALJ provided other good reasons for his assessment, including that Dr. Rachael was her primary care provider, but not with respect to her treatment for MS and seizures, and that the opinion was remote in nature. The ALJ did not discuss every regulatory factor in detail, but he was not required to do so. "The ALJ need not perform an exhaustive, step-by-step analysis of each factor; [he] need only provide 'good reasons' for both [his] decision not to afford the physician's opinion controlling weight and for [his] ultimate weighing of the opinion." *Rottmann v. Comm'r of Soc. Sec.*, 817 F. App'x 192, 195 (6th Cir. 2020) (quoting *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017))). The ALJ provided the necessary good reasons in this case; thus, remand is not warranted on this basis.

While Plaintiff does not challenge any other aspect of the ALJ's RFC assessment, the Court finds it was further supported by the opinions of the state agency medical consultants [Tr. 24, 108–14, 128–29]. "State agency medical consultants . . . are 'highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act.'" *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) (citation omitted). Here, the medical consultants reviewed the record and opined that, during an 8-hour

workday, Plaintiff could perform work involving: lifting and/or carrying up to 20 pounds occasionally and 10 pounds frequently; standing and/or walking for about 6 hours; sitting for about 6 hours; occasionally climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling; never climbing ladders, ropes, or scaffolds; avoiding even moderate exposure to extreme heat; and avoiding all exposure to hazards [Tr. 108–09, 128–29]. Based on his review of the record as a whole, the ALJ determined that the combined effects of Plaintiff's "pain, fatigue, and obesity would limit her in a manner more restrictive than that outlined by the State agency consultants[,]" and he therefore limited her to sedentary work [*Id.* at 24]. Plaintiff does not refer to the state agency medical consultants' opinions in her brief, nor does she argue against the ALJ's assessment of them.

Likewise, Plaintiff does not appear to challenge the ALJ's evaluation of the opinion of consultative examiner Jeffrey A. Uzzle, M.D. ("Dr. Uzzle"), but the Court briefly addresses it here for completeness. The ALJ afforded "some weight" to Dr. Uzzle's opinion [Tr. 23], and the Court finds the ALJ adequately explained his reasoning for doing so. For example, the ALJ considered that Dr. Uzzle had the benefit of examining Plaintiff in person, and Dr. Uzzle's assessment was generally consistent with his examination findings. However, the ALJ also criticized Dr. Uzzle's opinion in part for seeming to be based on Plaintiff's subjective complaints and not on objective medical evidence. The Court finds it was therefore appropriate for the ALJ to afford some weight to Dr. Uzzle's opinion.

In sum, the Court finds that the ALJ properly weighed the medical opinion evidence [*Id.* at 23–24]. Although Plaintiff may disagree with the ALJ's conclusions, her disagreement is insufficient to warrant remand. *See Justice*, 515 F. App'x at 588 ("In a battle of the experts, the

agency decides who wins. The fact that Justice now disagrees with the ALJ's decision does not mean that the decision is unsupported by substantial evidence.").

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 20**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 25**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

*/s/ Jill E. McCook*
Jill E. McCook
United States Magistrate Judge